UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARIUS ANTWAN PRINCE,

      Petitioner,

v.                                                                        Case No. 3:17-cv-1145-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Darius Prince, an inmate of the Florida penal system, initiated this action on October 9, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). Prince is proceeding on an amended petition (Amended Petition; Doc. 9). In the Amended Petition, Prince challenges a 2010 state court (Duval County, Florida) judgment of conviction for attempted second-degree murder and possession of a firearm by a convicted felon. Prince raises fourteen grounds for relief. See Amended Petition at 5-62.[2] Respondents have submitted an answer in opposition to the Amended Petition. See Answer to Petition for Writ of Habeas Corpus (Response; Doc. 28) with exhibits (Resp. Ex.). Prince filed a brief in reply. See Reply to Respondent's Response (Reply; Doc. 32). Prince has also filed a Motion for Fact-Development Procedures with

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

Memorandum in Support (Motion; Doc. 43), in which he requests the Court allow him to take depositions and submit interrogatories and requests for admissions to certain witnesses, as well as to include additional documentary evidence. This case is ripe for review.

## II. Relevant Procedural History

On February 26, 2010, the State of Florida (State) charged Prince by way of amended Information with attempted first-degree murder (count one) and possession of a firearm by a convicted felon (count two). Resp. Ex. A at 31. Prince proceeded to trial, at the conclusion of which a jury found Prince guilty of the lesser offense of attempted second-degree murder, with a specific finding that he actually possessed and discharged a firearm during the commission of the offense. Id. at 104-06. The jury also found Prince guilty as to count two, with a specific finding that Prince actually possessed a firearm. Id. at 107. On April 14, 2010, the circuit court adjudicated Prince to be a habitual felony offender (HFO), sentenced him to a term of incarceration of fifty years in prison as to count one and twenty years as to count two, and imposed a twenty-year minimum mandatory sentence as to count one and three-year minimum mandatory sentence as to count two . Id. at 124-30. The circuit court ordered the sentence imposed as to count two to run concurrently with the sentence imposed as to count one. Id. at 128.

Prince appealed his convictions and sentences to Florida's First District Court of Appeal (First DCA). Id. at 136. With the assistance of counsel, Prince argued in his initial brief that the circuit court:   (1) gave an incorrect jury instruction for attempted manslaughter and (2) fundamentally erred by failing to instruct the jury that the State had the burden to prove beyond a reasonable doubt that the killing was not justifiable or

excusable. Resp. Ex. E. The State filed an answer brief, Resp. Ex. F, and Prince filed a reply brief. Resp. Ex. G. On March 30, 2011, the First DCA per curiam affirmed Prince's convictions and sentences, and on April 26, 2011, issued the Mandate. Resp. Ex. H.

On February 23, 2012, Prince filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he argued his sentences were an illegal upward departure from the recommended guidelines and were based on facts that the jury found did not exist. Resp. Ex. I. On August 29, 2014, the circuit court denied the Rule 3.800(a) Motion. Resp. Ex. J.

On September 20, 2012, Prince filed a petition for writ of habeas corpus with the First DCA alleging his appellate counsel was ineffective for failing to argue on direct appeal that:  (1) the verdict was contrary to the weight of the evidence; and (2) there was insufficient evidence to convict. Resp. Ex. K. On October 16, 2012, the First DCA per curiam denied the petition on the merits. Resp. Ex. L. Prince moved for rehearing, which the First DCA denied on December 5, 2012. Resp. Ex. M.

On April 1, 2013, Prince filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. N at 1-40. Prince subsequently filed an amended motion pursuant to Rule 3.850 (Amended Rule 3.850 Motion), in which he alleged:  (1) trial counsel failed to call Eartha Jones as a witness; (2) trial counsel misadvised Prince concerning his right to testify; (3) trial counsel did not file a motion to suppress or object to the admission of evidence; (4) trial counsel failed to object to prosecutorial misconduct; (5) trial counsel failed to object to a statement not in evidence; (6) the prosecutor knowingly used false testimony to secure the conviction; (7) trial counsel did not object to testimony; (8) trial counsel failed to call a ballistics expert; (9)

trial counsel failed to call an alibi witness; (10) trial counsel failed to object to hearsay; (11) trial counsel failed to raise an objection to the State's discovery violation; (12) trial counsel failed to raise a viable defense; (13) trial counsel failed to suppress identification testimony; (14) trial counsel failed to file a motion to dismiss; and (15) the cumulative effect of these alleged errors denied Prince a fair trial and effective assistance of counsel. Id. at 41-79. The circuit court denied the Amended Rule 3.850 Motion on September 14, 2015, see id. at 239-40, the First DCA per curiam affirmed the denial on July 14, 2017, see Resp. Ex. R. The First DCA denied Prince's motion for rehearing, Resp. Ex. S, and issued the Mandate on September 14, 2017. Resp. Ex. R.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

4

before the Court. Because the Court can "adequately assess [Prince's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance

8

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most
> deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's application of Strickland was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is
> doubly so." Id. (citations and quotation marks omitted). "The
> question is not whether a federal court believes the state
> court's determination under the Strickland standard was
> incorrect but whether that determination was unreasonable -
> a substantially higher threshold." Knowles v. Mirzayance, 556
> U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied Strickland's deferential
> standard," then a federal court may not disturb a state-court
> decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at
> 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance,

556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's

performance mandated by Strickland, the AEDPA adds another layer of deference--this

one to a state court's decision--when we are considering whether to grant federal habeas

relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir.

2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI.  Motion for Fact Development

In Prince's Motion, he requests that the Court permit him to take depositions, interrogatories, and requests for admissions from Waffa Hanania, Gavin, the victim, Cristen Luihart, Lee, Solis, and himself. Motion at 3. Prince also requests the Court to include documentary evidence that is attached to the Motion as part of the record in this case. Id. The Eleventh Circuit has explained:

> Although a habeas petitioner is not entitled to discovery as a matter of course, petitioners are entitled to discovery upon showing "good cause." Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, 1796–97, 138 L.Ed.2d 97 (1997). Good cause is demonstrated "where specific allegations ... show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." Id. at 908–09, 117 S.Ct. at 1799 (quoting Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 1091, 22 L.Ed.2d 281 (1969)).

Daniel v. Comm'r, Ala. Dept. of Corr., 822 F.3d 1248, 1281 (11th Cir. 2016). Mere speculation or hypotheses do not constitute good cause. Arthur v. Allen, 459 F.3d 1310, 1311 (11th Cir. 2006). Upon review, the Motion is due to be granted to the extent that the Court will consider the documentation attached to the Motion in analyzing the Amended Petition, but the Motion is otherwise due to be denied because Prince has failed to demonstrate good cause for such discovery. The Court finds Prince's reasoning for seeking to depose or otherwise question the witnesses is speculative and for reasons explained in greater detail below, no additional fact discovery would establish Prince's entitlement to relief.

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As his first claim for relief, Prince alleges that his trial counsel was ineffective for failing to call Eartha Jones, Prince's grandmother, as a witness. Amended Petition at 5-7. According to Prince, Ms. Jones would have testified that she did not give the victim, Walter White, permission to be in front of her house and Ms. Jones previously "ran Mr. White and his buddies off for selling drugs in her front yard." Id. at 5. Prince contends this testimony would have demonstrated that White lied when he testified that he was talking about a Jaguars game with friends in front of Ms. Jones's house and that White had permission to be there. Id. at 5-6. Additionally, Prince maintains that the testimony would have established that Prince "was actually vindicating his grandmother's right not to have illegal drugs peddled in front of her residence." Id. at 6. Prince notes that counsel allowed Ms. Jones to testify at his sentencing to these same facts but asserts that a reasonable lawyer would have called Ms. Jones as a defense witness at trial to attack the credibility of the victim's testimony. Id.

Prince raised a substantially similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 45-46. The circuit court denied relief on this claim by adopting the State's response. Id. at 239. In its response, the State made the following arguments:

> The existence of Ms. Jones was known from day one. Ms. Jones was mentioned in the police report. Ms. Jones was mentioned in the arrest warrant. Additionally, Ms. Jones was mentioned in the deposition of three of the State's category A witnesses, to wit[:] Walter White, Crystal Howard and Joseph Royster. Thus, there was not a failure by the defense attorney to investigate and locate Ms. Jones because the defense attorney knew her name and her address.

In Mendoza v. State, 2012WL635803, 1 (Fla. 3[d] DCA 2012), the appellate court ruled that an ineffective assistance claim for failure to call a witness to testify must be distinguished from an ineffective assistance claim for failure to reasonably investigate and locate witnesses. The court reasoned that unlike the strategic decision to call a witness to testify at trial, the failure to reasonably investigate and locate witnesses can often serve as a colorable claim of ineffective assistance of counsel. Id. However, the court further reasoned that if a reasonable investigation had been conducted, a subsequent decision based on that investigation, such as the decision not to call a particular witness at trial, is presumed to be reasonable and strategic and is 'virtually unchallengeable.' Id., citing Strickland v. Washington, 466 U.S. 668, 690 (1984). (Emphasis added). The court noted that a defendant can rebut this presumption only by establishing that no competent counsel would have made the same decisions. Id. A defendant's claim of ineffective assistance cannot be successful absent a showing of legal incompetence or deficient performance. Bell v. State, 965 So. 2d 48, 56 (Fla. 2007).

The Defendant cannot rebut the presumption regarding Ms. Jones because the Defendant cannot establish that no competent counsel would have made the same decisions. Specifically, the Defendant argues that he wanted to call Ms. Jones in order to establish that the victim and his friends were selling drugs. However, Ms. Jones would not have been able to testify that the victim and his friends were drug dealers because such testimony would not have been relevant to the charges. The State had filed a motion in limine to prevent such testimony at trial, and the court indicated that the defense would need to proffer the testimony first to establish its admissibility. Additionally, whether or not the victim and his friends had permission to stand in front of Ms. Jones' home would not have been relevant to the charges. Thus, because the testimony the Defendant wanted brought out through this witness could not have been used at trial, the Defendant has failed to demonstrate that no competent attorney would have made the same choice. Additionally, because the testimony would not have been admissible or relevant to the charges, the Defendant has failed to demonstrate prejudice. Finally, as an alternative argument, the same testimony (i.e. the victim's friends were drug dealers) was testified to by Ms. Howard in her deposition; thus, if the evidence was admissible, which it was not for the reasons previously stated, the defense

attorney could have had Ms. Howard testify to it without calling Ms. Jones. Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground I regarding either a legal deficiency or prejudice, the State suggest this honorable court may summarily deny Ground I of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

Id. at 89-91 (record citations omitted). The First DCA per curiam affirmed the denial of relief on this claim. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits,[4] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that federal courts will seldom, if ever, second guess.'" Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). The record reflects that on December 2, 2008, White, Crystal Howard, Joseph Royster, Ray

---

[4] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Jones and "Hotdog" were standing in the street in front of Ms. Jones's house discussing the results of the Jacksonville Jaguars game from the day before the shooting. Resp. Exs. C at 214-16, 231, 233, 261-64, 300-01, 312; Resp. Ex. D at 325, 338-39, 347. White had parked his car on the street in front of Ms. Jones's house. Resp. Ex. C at 233.

Howard, Royster, Mr. Jones, and White all testified at trial. They stated that Prince approached the group yelling at them to move away from in front of Ms. Jones's house, whom Prince claimed was his grandmother. Resp. Exs. C at 216-17, 264-66, 302; D at 325-27. Notably, Royster testified that Ms. Jones is not Prince's biological grandmother. Resp. Ex. C at 265.[5] The group refused to leave, and Prince and White had a heated verbal confrontation. Resp. Exs. C at 217, 234, 264-66; D at 327-28. Prince momentarily left but returned a short time later armed with a revolver. Resp. Exs. C at 217-19, 266, 268-69; D at 327-28. White and Prince began to argue again to the point that White took off his jacket because he believed he was going to fight Prince. Resp. Exs. C at 257; D at 329. During the argument, White walked up to and knocked on Ms. Jones's front door in order to have her tell Prince that she gave White permission to park his car in front of her house; however, she was not home. Resp. Exs. C at 218, 233, 266-67; D at 327-30. As White walked back from Ms. Jones's door, Prince pointed the revolver at White and White told Prince to put the gun down and fight him like a real man. Resp. Exs. C at 268-69; D at 331. Prince told White to leave before Prince killed him. Resp. Exs. C at 216-21, 268-69; D at 331-32. White put his jacket in the back of his vehicle when Prince, who was

---

[5] At Prince's sentencing hearing, Ms. Jones testified on behalf of Prince. Resp. Ex. A at 154-57. Ms. Jones stated she was Prince's grandmother and implied that Walter was a drug dealer. Id. She further testified that Prince would help protect her from the local drug dealers by making them leave her yard. Id. at 55-56.

standing in front of the vehicle, fired a shot into the vehicle's hood. Resp. Exs. C at 240, 303; D at 331-32, 335, 355. White scrambled into the driver's seat, Prince's revolver still trained on him, and White began to drive away. Resp. Exs. C at 216-21, 303; D at 331-32, 355. Prince fired more shots, one of which hit the side door of the left rear passenger seat. Resp. Exs. C at 240, 270; D at 332, 335-36, 355-56. White then drove to two houses before returning to his residence, and Prince fled the scene in a silver Chrysler 300. Resp. Exs. C at 222; D at 321, 332-33, 356.

Based on this record, Ms. Jones's testimony would not have been relevant or established a defense to Prince's actions of shooting at the victim. Under Florida law, in order to justifiably use deadly force, a person must "reasonably [believe] that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." § 776.012(1), Fla. Stat. (2008). Additionally, a person is not justified in using deadly force to protect property unless "he or she reasonably believes that such force is necessary to prevent the imminent commission of a forcible felony." § 776.031, Fla. Stat. (2008). Florida defines a forcible felony as:

> treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use or threat of physical force or violence against any individual.

§ 776.08, Fla. Stat. (2008).

The testimony reflects that the victim and his group of friends were not on Ms. Jones's property but in the street; therefore, the protections of section 776.031 do not

apply here. Additionally, although the victim challenged Prince to a fistfight, no evidence suggested the victim posed an imminent danger to Prince, particularly in light of the fact that Prince was armed, and the victim was not. As such, Prince did not have justification to use deadly force under section 776.012(1). Ms. Jones's testimony that White did not have permission to be in front of her house or that he was a drug dealer would not have established a self-defense theory as these facts would not have created a factual situation in which Prince would have been legally justified in shooting the victim. With this in mind, there is no reasonable probability the outcome of the trial would have been different had counsel called Ms. Jones to testify on these matters. Counsel cannot be deficient for failing to raise a meritless defense. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Accordingly, Prince has failed to establish deficient performance or prejudice; therefore, he is not entitled to relief on the claim in Ground One.

### B. Ground Two

Prince contends that his trial counsel acted deficiently when she misadvised him about his right to testify. Amended Petition at 8-11. According to Prince, he wanted to testify but decided against it because his attorney incorrectly advised him that if he took the stand, the nature of his prior convictions would be revealed to the jury. Id. at 8-9. Had counsel given him correct advice, Prince maintains that he would have testified that "the victim [was] the aggressor who challenged him to a fight for trying to run him off from selling drugs in front of Mr. Prince's Grandmother's house." Id. at 9.

16

In ground two of Prince's Amended Rule 3.850 Motion, he raised a similar claim. Resp. Ex. N at 44-46. The circuit court denied relief, adopting the State's response. Id. at 239. The State explained, in pertinent part, that:

> [H]is motion fails on this ground, even without an evidentiary hearing, because he has failed to demonstrate prejudice. Specifically, the Defendant sat through the testimony of all the witnesses, including Ray Jones and Walter White. Both of those witnesses were impeached with prior convictions. Ray Jones was asked if he had been convicted of seven (7) felonies and he stated yes. Walter White was asked if he had been convicted of a felony eight (8) times and he said yes. No additional questions were asked of Mr. Jones or Mr. White regarding their felony convictions. It was after the Defendant witnessed the questioning of Ray Jones and Walter White regarding their prior convictions that the Defendant was engaged in a colloquy by the court about his decision not to testify. Thus, arguably, regardless of anything that the defense attorney may have told the Defendant, he witnessed for himself how a witness is impeached and knew that the specifics of the priors would not be told to the jury. Thus, he knew exactly how he would be impeached should he have chosen to testify. Accordingly, the Defendant has failed to demonstrate prejudice as to this ground. . . .
>
>                . . . .
>
> [I]n the instant case, after the clerk placed the Defendant under oath, the court did engage the Defendant in a colloquy regarding his right to testify. Thus, as an alternative argument, the trial court inquired of the Defendant regarding his right to testify. Specifically, the court did ask the Defendant during the trial if he wished to testify and he said that he did not. The trial court did not engage the Defendant in a lengthy colloquy in the instant case. However, the court did ensure the Defendant had conferred with his attorney and that they had decided to put forward the testimony of only one witness, to-wit:  Officer Solis. Florida's Supreme Court has upheld the finding of a voluntary waiver where the trial court did not specifically ask the defendant if counsel promised him anything or forced him not to testify and whether the defendant knew that he had a constitutional right to testify. Reynolds v. State, 2012WL4449126, 19 (Fla. 2012). The Court reasoned that there is no mandate that a trial court conduct a 'Faretta-type

inquiry' before accepting a defendant's decision to waive his Fifth Amendment right to testify. Id. at 20. Furthermore, a trial court's assessment of a defendant's decision at trial not to testify at trial should not be ignored because the defendant had a post-verdict afterthought, such as the one the Defendant has had in the case sub judice. Cole v. State, 700 So. 2d 33 (Fla. [5th] DCA 1997).

When a court inquires of the defendant on the record, a defendant should not be entitled to go behind the sworn representations made to the court in a post-conviction proceeding. Davis v. State, 938 So. 2d 555, 557 (Fla. [1st] DCA 2006). Thus, where a defendant makes a clearly and wholly inconsistent affirmance which contradicts his or her later post-conviction motion, the claims should be summarily denied. Russ v. State, 937 So. 2d 1199, 1201 (Fla. [1st] DCA 2006). A defendant should be bound by his or her sworn answers during a colloquy with the court and should not be able to later disavow those answers. Alfredo v. State, 71 So. 3d 138, 139 (Fla. [4th] DCA 2011). Allowing a defendant to ignore the oath and lie to the court is against public policy as it condones perjury. Iacono v. State, 930 So. 2d 829, 830 (Fla. [4th] DCA 2006). Therefore, a defendant should be estopped from receiving an evidentiary hearing on a post-conviction claim when the basis of the claim is that the defendant lied to the court under oath. Polk v. State, 56 So. 3d 804 (Fla. [2d] DCA 2011). Accordingly, as an alternative argument, since the Defendant has failed to show a prima facie case for relief as to Ground II regarding prejudice, the State suggests this honorable court may summarily deny Ground II of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

Id. at 247-50 (record citations omitted). The First DCA per curiam affirmed the circuit court's ruling without issuing a written opinion. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground Two is meritless because he cannot establish prejudice. Prince maintains that he would have testified that "the victim [was] the aggressor who challenged him to a fight for trying to run him off from selling drugs in front of Mr. Prince's Grandmother's house." Amended Petition at 9. Prince's proposed testimony does not establish that the victim presented an imminent danger of great bodily harm or death. Prince neither alleges that the victim had a weapon nor that the victim was preparing to attack Prince instead of merely arguing and talking tough. A challenge to fight, without more, is insufficient to establish an imminent danger. As such, even under Prince's version of events, he would not be entitled to use deadly force under Florida law. See §§ 776.012(1), 776.031, Fla. Stat. Accordingly, even if Prince testified at trial, there is no reasonable probability the outcome of the trial would have been different. Therefore, the claim in Ground Two is due to be denied because Prince has not demonstrated prejudice.

**C. Ground Three**

Prince asserts that his trial counsel was ineffective for failing to object to the introduction of photographs depicting bullet holes in the victim's vehicle. Amended Petition at 12-16. Prince contends these photographs should not have been admitted as evidence because the "photos were used to prove the essential fact without expert opinion or substantial proof that holes in the vehicle were caused by bullets fired from a

gun . . . ." Id. at 12. Prince also alleges that Officer Eduardo Solis, who responded to the scene and ultimately met with the victim at his house on the day of the shooting, had an obligation to locate and secure the vehicle within the same day of the incident for proper processing. Id. at 13. Similarly, Prince asserts that Detective Lee, who examined the vehicle eight days later, should have called an evidence technician to process the vehicle. Id. at 13-14. Prince maintains that based on the lack of forensic and expert evaluation of the vehicle, "[i]t cannot be said that Mr. White did not shoot his own vehicle to seek prosecution of the Petitioner." Id. at 14. According to Prince, his trial counsel was aware of these facts, but nonetheless allowed the photographic evidence to be admitted as evidence. Id. at 15. Prince avers that had the vehicle been properly processed, it could have produced exculpatory evidence. Id. at 16.

Prince raised a similar claim as ground three of his Amended Rule 3.850 Motion. Resp. Ex. N at 46-49. The circuit court denied relief on this claim by adopting the State's response, id. at 239, in which the State argued, in pertinent part, that:

> During the trial, several witnesses testified that the holes in the vehicle were bullet holes. Detective Lee was the first witness to identify a photograph of a bullet hole in the vehicle, which was a photograph that she had taken herself. The defense attorney objected that the State had not laid the proper predicate to allow Detective Lee to testify regarding what caused the hole in the vehicle. The State then asked Detective Lee how many times she had seen evidence that had been shot and she said dozens in her twenty-three years with the Jacksonville Sheriff's Office and that the hole appeared to be caused by a bullet. In addition to objecting to Detective Lee's testimony, the defense attorney cross examined her on the fact she lacked ballistics and forensic science training and thus, could only say the hole 'looked' like a bullet hole. Additionally, the defense attorney brought out through cross examination that even if the hole was in fact caused by a bullet, Detective Lee could not say when the hole was made. The defense attorney also brought out that Officer

Solis did not attempt to have an evidence technician come to the scene. However, despite the attorney's attempts to impeach her credibility, Detective Lee maintained her testimony that based upon his [sic] training and experience, the holes in the vehicle looked like bullet holes.

In addition to Detective Lee's identification of the hole as a bullet hole, Latasha Jackson, the owner of the vehicle at issue, identified a photograph of the bullet hole. Ms. Jackson testified that the holes were not present before the date of the crime. Ms. Jackson also testified that she could hear one bullet rolling around inside of her vehicle after the shooting. Finally, the victim, Walter White, also identified the holes in the vehicle as bullet holes.

Section 90.701, Florida Statutes provides that if a witness is not testifying as an expert, the witness' testimony about what he or she perceived may be in the form of inference and opinion when the witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of facts without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party and the opinions and inferences do not require a special knowledge, skill, experience or training. Florida Statute 90.701 and Reynolds v. State, 99 So. 3d 459, 477 (Fla. 2012). Regarding Detective Lee's testimony, she testified about her experience in observing evidence with bullet holes. An officer is permitted to testify with regard to visual comparison, and does not need to be specially trained to make that type of visual comparison, because an intelligent person with some degree of experience may and should be permitted to testify, leaving the jury the determination of the credence and weight to be given thereto. Id. at 478. Furthermore, Detective Lee acknowledged that she did not have specialized training in bullet holes, and thus, it is unlikely that the jury was misled by her testimony. Bolin v. State, 41 So. 3d 151, 158 (Fla. 2010). Accordingly, in addition to failing to establish a legal deficiency, the Defendant has failed to demonstrate prejudice.

Each witness who testified that the holes in the vehicle appeared to be bullet holes personally inspected the vehicle after the shooting and saw the holes. Additionally, Crystal Howard, Joseph Royster and Walter White, the victim, witnessed the Defendant shooting at the vehicle. Opinion

testimony of a lay witness is permitted if based on what the witness has personally perceived. Nardone v. State, 798 So. 2d 870, 873 (Fla. 4th DCA 2001). Thus, a witness has been allowed to testify that a substance appeared to be blood; that an object appeared to have been used to wipe something with blood on it; that clothes appeared to be bleached and that two tape samples were the same type of tape.  Bolin v. State, 41 So. 3d 151, 157 (Fla. 2010); Reynolds v. State, 99 So. 3d 459, 478 (Fla. 2012) and Wade v. State, --So. 3d --, 39 Fla. Law Weekly S757, 16 (Fla. 2014).

Had the attorney filed a motion to suppress the testimony of the witnesses that the holes in the vehicle appeared to be bullet holes, the motion would have been denied for the same reasons stated above that the witness' testimony was admitted. An attorney is not ineffective for failing to make a meritless objection. Lugo v. State, 3 So. 3d 1 (Fla. 2008). If the record conclusively refutes a factual basis for filing a motion to suppress, it is not ineffective assistance of counsel to fail to file a motion to suppress. Jackson v. State, 640 So. 2d 1173 (Fla. 2d DCA 1994). Because the Defendant has failed to demonstrate that a  motion, even if filed, would have been successful in light of the evidence in the case, the Defendant has failed to show he has suffered any prejudice due to counsel's failure to file a motion to suppress. Gettell v. State, 449 So. 2d 413, 414 (Fla. 1984) and State v. Freeman, 796 So. 2d 574, 578 (Fla. [2d] DCA 2001). . . .

Id. at 251-54 (record citations omitted). The First DCA per curiam affirmed the denial of

the claim without issuing a written opinion. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. "The exclusionary rule is . . . a judicially created means of deterring illegal searches and seizures." Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363 (1998) (citing United States v. Calandra, 414 U.S. 338, 348 (1974)). Prince has not alleged a constitutional violation in the taking of the photographs he claims counsel should have suppressed; therefore, suppression of the evidence would not have been legally justified. At best, Prince has shown a deficient investigation on part of the officers, which is an issue best addressed via cross-examination and arguments at trial, not suppression of evidence. Indeed, trial counsel did just that throughout the trial, cross-examining the officer witnesses about their failures to call an evidence technician to the scene of the shooting or to process the vehicle once it had been found. Resp. Ex. C at 150, 153, 176-82. Counsel cannot be deemed deficient for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

The record further reflects that trial counsel did object when Detective Lee, looking at the photograph of the victim's vehicle, characterized holes in the vehicle as bullet holes, and the circuit court required the prosecutor to lay the proper predicate. Resp. Ex. C at 166. Thereafter, the prosecutor asked a series of questions to lay the predicate for Lee's knowledge of bullet holes in vehicles. Id. at 166-67. Lee testified that her investigations tend to involve vehicle shootings and she has observed dozens of items of evidence that have been shot. Id. Based on Lee's training and experience, she testified "[i]t looked to

23

me to be a bullet hole entrance." Id. at 167. Additionally, trial counsel vigorously cross-examined Lee about her lack of training and expertise in ballistics or forensics. Id. at 179-81, 192, 195. Accordingly, the record reveals that Prince's trial counsel did object and also challenged the credibility of Lee's characterization of the hole, thus refuting Prince's allegations.

Lastly, Prince cannot establish prejudice, because several eyewitnesses, including the victim who drove the vehicle, testified that Prince shot the vehicle. Id.  Thus, even if the photograph of the vehicle was never introduced in evidence and Lee never testified that the holes in the pictures were bullet holes, there is no reasonable probability the outcome of the trial would have been different based on the remaining evidence. In light of the above analysis, the Court finds Prince has failed to establish deficient performance or prejudice; therefore, Prince's claim in Ground Three is due to be denied.

### D. Grounds Four, Five, and Six

Prince's next three grounds for relief are related, and the Court will address them together. In Ground Four, Prince alleges that his trial counsel was deficient for failing to object to the opening argument in which the prosecutor improperly commented on a statement not in evidence. Amended Petition at 18-21. Specifically, Prince asserts the following statement was improper:

> And the defendant was saying things to him like, you think I'm playing, you think I'm playing. I'll kill you, I'll kill you. Get out of here. Are you trying me? Are you trying me? Get out of here.
>
> . . . .
>
> The defendant, get out of here, get out of here. You think I'm playing. I'm going to kill you.

Resp. Ex. C at 135. According to Prince, the discovery the State provided did not include witness statements that Prince used the word "kill" or that he otherwise threatened to kill anyone. Amended Petition at 18-19. Likewise, the victim did not state the same at his deposition. Id. Therefore, counsel should have moved for a hearing on the State's failure to disclose this statement prior to trial. Id. at 20. As Ground Five, Prince contends that his counsel was deficient for not objecting when the victim testified for the first time at trial that Prince threatened to kill him. Id. at 19. Lastly, in Ground Six Prince contends that the prosecution knowingly presented false testimony when it allowed the victim to testify that Prince threatened to kill him. Id. at 26-28. Prince maintains that the statement was false because it was inconsistent with the victim's prior statements. Id. Additionally, he asserts the prosecutor knew because she mentioned the death threat in her opening statement. Id.

Prince brought substantially similar claims in his Amended Rule 3.850 Motion. Reps. Ex. N at 50-54. In the State's response, which the circuit court adopted in denying this claim, id. at 239, the State contended that Prince was not entitled to relief because:

> Under Florida Rule of Criminal procedure 3.220(b), the prosecutor has an obligation to provide discovery, which includes a continuing duty to disclose. Smith v. State, 7 So. 3d 473, 5-3-504 (Fla. 2009). However, the statement provided to the defense was not materially altered at trial sufficient to mandate additional disclosure. State v. Evans, 770 So. 2d 1174, 1181 (Fla. 2000). Specifically, the State only commits a discovery violation by not disclosing to the defendant information that materially alters a prior statement. Id. In the case sub judice, the victim Walter White, testified in his deposition that the Defendant stated to him right before the shooting, "You think I'm playing, oh, you think I'm playing?> Oh, you think I'm playing?" Mr. White also testified in his deposition that the Defendant stated, "You think I'm playing, [expletives]? You think I'm playing?" Then according to Mr. White, as soon as the Defendant asked if he thought he was

playing, the Defendant fired several shots at him. Mr. White testified that immediately after saying "You think I'm playing," the Defendant unloaded his gun, "[p]ow, pow, pow, pow" and he feared for his life. Thus, the Defendant and his attorney were on notice prior to the trial that Mr. White was going to testify that the Defendant made the statement "Do you think I'm playing?" followed immediately by shooting, which made the victim believe he was going to die (i.e. an intent to kill).

Furthermore, even if this court finds that the State failed to provide the statement at issue, the failure to disclose did not materially hinder the Defendant's trial preparation or strategy. Smith at 503. Specifically, if this court determines there was a discovery violation, the trial court must inquire as to whether the violation was willful or inadvertent; whether the violation was substantial or trivial and whether the violation had a prejudicial effect on the defendant's trial preparation. Kipp v. State, 128 So. 3d 879, 883 (Fla. 4th DCA 2013). When a discovery violation has occurred, the failure to request a Richardson[6] hearing, and thus the failure of the trial court to conduct a Richardson hearing, is not per se reversible error. Id. The relevant inquiry by the court is whether there is a reasonable possibility that the discovery violation 'materially hindered the defendant's trial preparation.' Id., citing Scipio v. State, 928 So. 2d 1128, 1150 (Fla. 2006). The Court reasoned that an analysis of procedural prejudice "considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation." Id.

In the instant case, the statement "Do you think I'm playing," followed by several shots being fired, demonstrated an intent to kill without necessitating the intent actually being stated verbally. The Defendant has not shown that his preparation would have been different because the statement that was disclosed, combined with the shooting, demonstrated the intent to kill. Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground IV regarding either a legal deficiency or prejudice, the State suggests this honorable court may summarily deny Ground IV of the Defendant's Motion based upon the record

---

[6] Richardson v. State, 246 So. 2d 771 (Fla. 1971)

provided by the State, and the State's argument in this
Response, without holding an evidentiary hearing.

Id. at 254-56 (record citations omitted). The State adopted this same rational in its

argument against granting relief as to the claim in Ground Five. Id. at 256-58. As to the

claim in Ground Six, the State argued the following:

> A Giglio[7] violation is established when a defendant shows
> that 1) a witness gave false testimony; 2) the prosecutor knew
> the testimony was false and 3) the statement was material.
> Rodriguez v. State, 919 So. 2d 1252, 1269 (Fla. 2005). The
> Defendant's only support that the victim's testimony was false
> is his claim that the statements were not provided in
> discovery. Otherwise, the victim's statement that the
> Defendant said he was going to kill the victim was consistent
> with the testimony of the other witnesses who testified that the
> Defendant fired a gun directly at the victim. A defendant fails
> to show that testimony presented is actually false or that the
> prosecutor had any knowledge of allegedly false testimony
> when the testimony is consistent with other witnesses who
> testified at trial. Id. A defendant fails to make a prima facie
> case of a Giglio violation when he fails to include any
> allegations which demonstrate that the State had knowledge
> of the allegedly false statements. Davis v. State, 26 So. 3d
> 519, 532 (Fla. 2009). Accordingly, since the Defendant has
> failed to show a prima facie case for relief as to Ground VI,
> the State suggests this honorable court may summarily deny
> Ground VI of the Defendant's Motion based upon the record
> provided by the State, and the State's argument in this
> Response, without holding an evidentiary hearing.

The First DCA affirmed the denial of relief on these claims without a written opinion.

Resp. Ex. R.

To the extent that the First DCA decided the claims on the merits, the Court will

address the claims in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

---

[7] Giglio v. United States, 405 U.S. 150 (1972).

concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of these claims.

Nevertheless, even if the state appellate court's adjudication of these claims is not entitled to deference, the requested relief is not warranted. The victim testified at trial that Prince threatened to kill him. Resp. Ex. D at 331. Accordingly, as there was an evidentiary basis for this statement, there would have been no grounds on which to object. See Occhicone v. State, 570 So. 2d 902, 904 (Fla. 1990) ("Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence."). Additionally, Prince cannot establish prejudice as to the claims in Grounds Four and Five. The Court notes that the jury found Prince guilty of the lesser offense of attempted second-degree murder instead of attempted first-degree murder. "The only meaningful difference between first- and second-degree murder in Florida is that first-degree murder requires the element of premeditation, while second-degree murder does not." United States v. Jones, 906 F.3d 1325, 1329 (11th Cir. 2018) (citing § 782.04(1)(a), Fla. Stat.). Given the verdict in this case, there is no reasonable probability the outcome of the trial would have been different had the victim not testified that Prince threatened to kill him. A threat to kill possibly could have supported an attempted first-degree murder conviction;  however, because the jury found that Prince did not have a premeditated design to kill the victim, evidence of such threats would not have changed the outcome of the trial. Even if the victim had not testified about this threat,

the evidence adduced at trial, outlined in greater detail above, would still support attempted second-degree murder. See § 782.04(3), Fla. Stat. ("The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree. . . .") (emphasis added). Indeed, the evidence supported a conclusion that Prince knowingly shot into an occupied moving vehicle, which is an imminently dangerous act that demonstrated a disregard for the victim's life. Accordingly, Prince cannot demonstrate prejudice as to the claims in Grounds Four and Five.

Likewise, Prince cannot establish a Giglio violation. "To establish a Giglio claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011) (quotation marks and ellipsis omitted). Mere inconsistency in testimony is insufficient to establish a Giglio claim. United States v. Stein, 846 F.3d 1135, 1149 (11th Cir. 2017). Additionally, "[a] material misrepresentation occurs when there is any reasonable likelihood that the false testimony could have affected the judgment." Id. (citing Guzman, 663 F.3d at 1348). The mere fact that the victim's testimony was inconsistent with his previous deposition testimony does not establish his trial testimony was false, especially where Prince has not shown that the victim's earlier statements were not false. See id. Moreover, Prince cannot establish this testimony was material, for the same reason explained above, the jury convicted Prince of a lesser offense, the elements

of which would have been established even if the victim had not given this testimony. For the above stated reasons, the claims in Grounds Four, Five, and Six are due to be denied.

### E. Ground Seven

As Ground Seven, Prince asserts that his trial counsel should have objected and moved for a mistrial when Detective Lee testified on matters of ballistics, forensic science, and bullet path trajectory. Amended Petition at 29-33. Notably, Prince is not challenging Lee's determination that the holes were bullet holes, rather he challenges later testimony regarding the bullet trajectory. Id. Prince maintains that it was improper for Lee to give expert opinion testimony because she was a lay witness. Id. Prince argues that without this expert testimony from Lee, there would have been reasonable doubt that the holes in the vehicle were bullet holes. According to Prince, if Lee did not testify on these matters, the allegedly sub-par investigation and the lack of credible eyewitnesses would have resulted in his possible acquittal. Id.

Prince raised a substantially similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 54-58. The circuit court denied relief on the claim by adopting the State's response. Id. at 239. The State argued this claim should be denied for the following reasons:

> This ground is nearly identical to Ground III above, with the only difference being in this ground, the Defendant opines that his attorney should have objected to the witness' testimony about the holes in the vehicle being created by bullets, whereas in Ground III, the Defendant opines his attorney should have filed a motion to suppress the photographs of the alleged bullet holes. Thus, the State relies upon the same evidence in the record and argument that was put forth in Ground III above. However, the State would note that although as a general rule a finding that an attorney acted a certain way based upon trial strategy should be made only after an evidentiary hearing, such as whether or not to object,

when such an objection would have been meritless, an attorney is not ineffective for failing to make a meritless objection. <u>Fonseca v. State</u>, 66 So. 3d 352, 354 (Fla. [3d ]DCA 2011) and <u>Lugo v. State</u>, 3 So. 3d 1 (Fla. 2008). Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground VII regarding either a legal deficiency or prejudice, the State suggests this honorable court may summarily deny Ground VII of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

<u>Id.</u> at 259-60 (record citations omitted). The First DCA per curiam affirmed the denial of relief without issuing a written opinion. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground Seven is without merit. The record refutes Prince's allegations. Trial counsel objected to Lee's testimony that bullets caused the holes. Resp. Ex. C at 166. Prince maintains that this objection was insufficient to challenge Lee's testimony immediately following in which she stated the bullet entered from the outside. It is clear from the context of the transcript that any subsequent objection would have been denied because the circuit court allowed Lee to testify on this matter based on her

experience and training. Id. at 167. Notably, on redirect, the prosecutor asked Lee if she could tell the path of the bullet. Id. at 189. Trial counsel objected but was overruled. Id. at 189-90. Accordingly, not only does the record refute this claim but it is evident from the transcript that the circuit court would not have sustained the objection. Moreover, as explained in greater detail above, Prince cannot demonstrate prejudice, multiple eyewitnesses testified that Prince shot the vehicle and shot at the victim. Thus, even if Lee had not given this testimony, the outcome of the trial would not have been different. For the above stated reasons, the claim in Ground Seven is due to be denied.

### F. Ground Eight

Prince contends that his trial counsel was ineffective because she failed to hire a ballistics expert as a resource and witness to refute the State's theory that the holes in the vehicle were bullet holes. Amended Petition at 34-37. According to Prince, a forensic expert would have testified that bullets did not make the holes and that the paths of alleged bullet holes were inconsistent with Lee's testimony. Id. at 35.

Prince raised a similar claim as ground eight of his Amended Rule 3.850 Motion. Resp. Ex. N at 58-59. The circuit court denied this claim, adopting the State's response. Id. at 239. In its response, the State raised the following arguments in support of denial:

> Regarding the Defendant's argument that his attorney was deficient for not hiring an expert in ballistics or bullet flight path trajectory, Officer Solis testified that he did not look for shell casings because certain types of firearms, such as a revolver, do not eject shell casings. Officer Solis stated that he did not look for projectiles. However, Officer Solis stated that he did not look for projectiles at the scene because he did not know the trajectory or direction in which the bullets travelled. In fact, Officer Solis testified that because he did not have the vehicle that was shot and he did not have any shell casings, he had no physical evidence at the scene to process. The same would be true of an expert hired to testify regarding ballistics

or bullet flight path trajectory in this case (i.e. there would be no physical evidence to testify about). Accordingly, the Defendant has failed to demonstrate a legal deficiency or prejudice in his attorney's failure to hire an expert in ballistics or bullet flight path trajectory.

Additionally, the detective who testified that the holes in the vehicle were bullet holes was not 'untrained.' To the contrary, Detective Lee testified that she had seen dozens of pieces of evidence that had holes from bullets in her 23 years with the Jacksonville Sheriff's Office. Furthermore, as previously noted in Ground III of this Response, a lay person can testify whether or not a hole was created from a bullet, which is what occurred in the instant case. See [sic] Section 90.701, Florida Statute and Reynolds v. State, 99 So. 3d 459, 477 (Fla. 2012). In the case sub judice, with four different witnesses testifying that the Defendant shot at the victim while the victim was in his vehicle, even if an expert could cast some doubt on whether the holes in the photographs were holes made by a bullet, an expert would not undermine the confidence in the conviction. Johnston v. State, 63 So. 3d 730, 743 (Fla. 2011). Additionally, as noted by Detective Lee, no one, not even an expert, can look at a bullet hole and state when the hole was made. Thus, the Defendant fails to demonstrate the prejudice prong of the Strickland test if he fails to show a reasonable probability that but for counsel's failure to consult with an expert, the result of the proceeding would have been different. Green v. State, 975 So. 2d 1090, 1107 (Fla. 2008). Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground VIII regarding either a legal deficiency or prejudice, the State suggests this honorable court may summarily deny Ground VIII of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

Id. at 261-62 (record citations omitted). The First DCA per curiam affirmed the denial of relief on this claim without a written opinion. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court

33

concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is meritless. Vague, conclusory, speculative, or unsupported claims cannot establish an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). More than mere conceivability is required to establish prejudice, the likelihood of a different result must be substantial, not just conceivable. Jenkins v. Comm., Ala. Dep't of Corr., 936 F.3d 1252, 1274 (11th Cir. 2019). The Court finds this claim is conclusory and speculative because Prince merely alleges, without support, that a ballistics expert would have examined the facts of this case and uncovered exculpatory evidence. However, it is entirely possible a ballistics expert could have come to the same conclusion as Detective Lee did in this case. Accordingly, this claim is speculative and does not entitle Prince to relief. See Tejada, 941 F.2d at 1559; Jenkins, 936 F.3d at 1274. Moreover, no casings or projectiles were discovered at the scene or in the vehicle, Resp. Ex. C at 143, 152-52, 160, 177-78; therefore, the only thing an expert could have examined would have been the holes in the vehicle. The State introduced pictures of the bullet holes into evidence, which appear to show indentations around the holes consistent with the hole being made from the outside. Id. at 78-85. Based on the lack of evidence and the appearance of the holes in the vehicle, the Court finds that any testimony a ballistics expert could have gave would

have been minimal, such that it would not have changed the outcome of the trial, particularly in light of the substantial amount of evidence of Prince's guilt. Thus, for these reasons, the claim in Ground Eight is due to be denied.

### G. Ground Nine

Prince maintains that his trial counsel was deficient for failing to call Quentin Gavin as an alibi witness. Amended Petition at 39-40. According to Prince, Gavin was an eyewitness who would have testified that the victim and other state witnesses were selling drugs in front of Prince's grandmother's house and that Prince and the victim had a fight but there was no shooting. Id. at 39. Prince maintains counsel knew about Gavin and knew that Gavin was the only eyewitness who testified in conformance with Prince's theory of the facts and, therefore, counsel should have called Gavin to testify. Id. at 39-40. Prince contends Gavin's testimony "would have weighed heavily in the minds of the jury" and impeached the State's witnesses. Id. at 39.

In Prince's Amended Rule 3.850 Motion, Prince raised a substantially similar claim. Resp. Ex. N at 60-61. The circuit court denied relief on this claim, adopting the State's response, which presented the following arguments against granting relief:

> As noted previously in Ground I above, testimony that the victim and his friends were allegedly selling drugs was not going to be admitted because such testimony would not have been relevant to the crime charged. Furthermore, the presence and location of Quentin Gavin came out in the deposition of the victim Walter White. Mr. White told the attorney that "Q" was present with the Defendant during the shooting. Mr. White also told the defense attorney where in the Duval County jail that Q was being housed.
>
> In Mendoza v. State, 2012WL635203, 1 (Fla. [3d] DCA 2012), the appellate court ruled that an ineffective assistance claim for failure to call a witness to testify must be distinguished form an ineffective assistance claim for failure

to reasonably investigate and locate witnesses. The court reasoned that unlike the strategic decision to call a witness to testify at trial, the failure to reasonably investigate and locate witnesses can often serve as a colorable claim of ineffective assistance of counsel. Id. However, the court further reasoned that if a reasonable investigation has been conducted, a subsequent decision based on that investigation, such as the decision not to call a particular witness at trial, is presumed to be reasonable and strategic and is 'virtually unchallengeable.' Id. citing Strickland v. Washington, 466 U.S. 668, 690 (1984). (Emphasis added). The court noted that a defendant can rebut this presumption only by establishing that no competent counsel would have made the same decision. Id. A defendant's claim of ineffective assistance cannot be successful absent a showing of legal incompetence or deficient performant. Bell v. State, 965 So. 2d 48, 56 (Fla. 2007).

The Defendant cannot rebut the presumption regarding Quentin Gavin ("Q") because the Defendant cannot establish that no competent counsel would have made the same decision. Specifically, the Defendant argues that he wanted to call Quentin Gavin in order to establish that the victim and his friends were selling drugs. However, Mr. Gavin would not have been able to testify that the victim and his friends were drug dealers because such testimony would not have been relevant to the charges. Additionally, even if Mr. Gavin testified that there was only a fist fight and that no firearm was involved, such testimony would not have been more credible than the testimony of Crystal Howard, Joseph Royster, Ray Jones and Walter White that there was in fact gun fire, especially when combined with the holes in the vehicle, which Detective Lee testified were bullet holes based upon her training and experience, which included 23 years with the Jacksonville Sheriff's Office. Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground IX regarding either a legal deficiency or prejudice, the State suggests this honorable court may summarily deny Ground IX of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

Id. at 239, 262-64 (record citations omitted). The First DCA per curiam affirmed the denial of relief on this claim. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. As an initial matter, Gavin would not be considered an alibi witness because Gavin's proposed testimony placed Prince at the scene of the crime. See Pasha v. State, 225 So. 3d 688, 710 (Fla. 2017) (quoting Blackwell v. State, 86 So. 224, 227 (1920)) ("'The defense known in law as an 'alibi' is that, at the time of the commission of the crime charged in the [information or] indictment, the defendant was at a different place, so that he could not have committed it.'"). In any event, to the extent Prince generally complains about his counsel's failure to call Gavin as a witness, the Court again notes that "'[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that federal courts will seldom, if ever, second guess.'" Knight, 936 F.3d at 1340. With that principle in mind and in light of the substantial evidence of Prince's guilt as described above, the Court finds that there is no reasonable probability that Gavin's testimony would not have changed the outcome of the trial. Four eyewitnesses testified that Prince fired multiple rounds. Additionally, photographic evidence supported by witness testimony established that

there were two bullet holes in the victim's vehicle. Based on the totality of this evidence, the circuit court's conclusion that Gavin's testimony would not have led to Prince's acquittal is reasonable. Thus, Prince is not entitled to federal habeas relief and the claim in Ground Nine is due to be denied.

### H. Ground Ten

In Ground Ten, Prince alleges that his trial counsel was deficient because counsel failed to object on hearsay grounds to Latasha Jackson's testimony's that her vehicle had been shot and identifying holes shown in the photograph of the vehicle as bullet holes. Amended Petition at 41-44. Prince also complains that Jackson impermissibly testified that a bullet ricocheted within the hood of the vehicle, and that the bullet still rattles around the engine block. Id. at 42. Prince asserts that counsel should have objected that Jackson was unqualified to give this testimony because she was not a ballistics expert. Id. According to Prince, Jackson's testimony was especially weighty because she was not present for the incident and would have had no reason to lie. Id. at 43. Therefore, Prince argues that had counsel objected the result of the trial would have been different. Id. at 43.

Prince raised a similar claim in his Amended Rule 3.850 Motion. Resp. Ex. N at 61-64. The circuit court adopted the State's response in denying this claim, which argued the claim should be denied because:

> Ms. Jackson identified photographs of her vehicle and testified that the holes in her vehicle were bullet holes. However, the defense attorney cross-examined Ms. Jackson regarding the fact she was not present during the shooting and was simply shown the vehicle by Mr. White with holes in it. Furthermore, even if her testimony was improper regarding what caused the holes in her vehicle, three eyewitnesses testified that the Defendant shot directly at the victim, who was

> inside the vehicle during some of the shooting. Furthermore, the victim, Walter White, testified that the bullets pierced the vehicle and caused holes seen in the photographs. Therefore, the Defendant has failed to demonstrate prejudice regarding Ms. Jackson's testimony. Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground X regarding either a legal deficiency or prejudice, the State suggests this honorable court may deny Ground X of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

Id. at 239, 264 (record citations omitted). The First DCA per curiam affirmed the circuit court's decision without issuing a written opinion. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim for relief in Ground Ten is meritless. The record reflects that trial counsel did not object to Jackson's direct testimony identifying bullet holes and discussing a projectile that still rattles around the hood of her vehicle. Resp. Ex. C at 202-04. Although counsel did not object, she did cross-examine Jackson on the fact that she was not present when those holes were created, which attacked the credibility of Jackson's direct testimony. Id. at 209. In any event, the Court finds Prince cannot

demonstrate prejudice because photographic evidence of the bullet holes was entered into evidence and four eyewitnesses testified that Prince fired shots, and three of those witnesses testified Prince shot at the vehicle. Accordingly, even if Jackson never characterized the holes as bullet holes, there is no reasonable probability the outcome of the trial would have been different, particularly because Jackson would have still been able to testify that the holes did not exist in her vehicle prior to the morning of the incident. Id. at 203-04. In view of the above, Prince's claim for relief in Ground Ten is due to be denied.

**I. Ground Eleven**

Prince contends that his trial counsel failed to object and move for a new trial based on the State's failure to disclose the fact that Detective Lee canvased the area near the scene of the crime and found no witnesses of value. Amended Petition at 46-49. According to Prince, Lee first testified to this information at trial and the State had specifically disclosed prior to trial that police did not conduct a canvass. Id. at 46. Prince maintains that this information "produced positive results of favorable evidentiary value for the defense, however this evidence was never turned over to the defense." Id. Prince contends the fact that the witnesses had no information of value was important to his defense because it demonstrated that the witnesses neither heard nor observed gun shots. Id. at 47-48. Prince argues that such witness testimony that no shots were heard would have resulted in his acquittal. Id. at 48.

Prince raised a substantially similar claim as ground eleven of his Amended Rule 3.850 Motion. In rejecting this claim, the circuit court adopted the State's response. Id. at 239. The State contended this claim should be denied for the following reasons:

In the instant case, Detective Lee testified that on the date she went to the scene, although she spoke to people who happened to be out while she was there, no one had any additional information regarding the case. The defense attorney questioned Detective Lee regarding her training in writing accurate police reports. However, as noted by the Detective, there was no information gained from the neighborhood canvas, and thus no information to put into a report. Additionally, on re-direct, Detective Lee clarified that it was not actually a neighborhood canvas, but rather she questioned guys that were standing on the corner across the street from where Ms. Jones lived prior to interviewing Ms. Jones. Otherwise, Detective Lee did not testify that she interviewed residents who actually lived in the area. Furthermore, Officer Solis testified that many of the homes in that area are vacant and that none of the residents came out to talk to him when he was completing the initial investigation of the shooting. Additionally, Officer Solis testified that it has been his experience that unless a person is directly involved in a crime, people generally do not see or hear anything. Thus, the Defendant has failed to demonstrate that there were any witnesses or evidence that would have assisted him in his case. Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground XI regarding either a legal deficiency or prejudice, the State suggests this honorable court may summarily deny Ground XI of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

Id. at 266-67 (record citations omitted and emphasis in original). The First DCA per curiam affirmed the circuit court's denial of relief without a written opinion. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Eleven is without merit. The record reflects that during Lee's cross examination, trial counsel asked Lee if it was correct that when Lee visited the scene Lee did not talk with neighbors and residents nearby. Resp. Ex. C at 185. Lee responded, "I did speak with people that were out during the time I was there, and no one had any other information." Id. (emphasis added). Prince assumes, without support, that the people Lee talked to even observed the incident, let alone had information to support his defense. Based on Lee's testimony it is just as likely that these individuals could have corroborated the State's witnesses. Accordingly, the Court finds this claim is speculative and Prince cannot establish prejudice. See Tejada, 941 F.2d at 1559; Jenkins, 936 F.3d at 1274. Therefore, relief on the claim in Ground Eleven is due to be denied.

### J. Ground Twelve

According to Prince, his trial counsel was ineffective for failing to raise a viable defense. Amended Petition at 50-56. Prince contends that his counsel should have argued and presented witness testimony to make the following points in defense of his innocence:  (1) the victim and his friends were convicted drug dealers selling drugs in front of his grandmother's house; (2) Prince never fired a gun; (3) the police investigation

was lacking; (4) the victim was the aggressor; and (5) it was possible the victim put the bullet holes in his own vehicle to frame Prince.[8] Id. at 51-64.

The record reflects that Prince raised an almost identical claim in his Amended Rule 3.850 Motion, Resp. Ex. N at 66-71, which the circuit court denied by adopting the State's response. Id. at 239. The State argued against granting relief on this claim because:

> [T]he defense attorney did question Joseph Royster and Walter White regarding their felony convictions, which were also brought out during direct examination. The statute only allows the number of the felony convictions to be discussed, not the specific nature of the felony conviction, as long as the witness testifies truthfully. Florida Statute 90.610 and Jackson v. State, 570 So. 2d 1388, 1390 (Fla. 1st DCA 1990). Furthermore, the fact the witnesses were allegedly selling drugs would not have been admissible in the trial. As a general rule, credibility may not be attacked by proof that a witness has committed specific acts of misconduct that bear on the truthfulness of the witness. Florida Statute 90.610. Only conduct which results in a criminal conviction is admissible to prove bad character. Id. Thus, the attorney was not ineffective for not trying to question the witnesses about whether or not they were selling drugs. Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground XII regarding either a legal deficiency or prejudice, the State suggests this honorable court may summarily deny Ground XII of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding an evidentiary hearing.

Id. at 267-68 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of relief. Resp. Ex. R.

---

[8] Much of what Prince contends counsel should have raised as defenses are matters he raised in separate claims in the Amended Petition. To the extent the claims in Ground Twelve consist of claims the Court has previously analyzed above, the Court adopts the same reasoning, without further discussion, in finding that counsel was not deficient in the manner Prince alleges in Ground Twelve.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Twelve is meritless. To the extent Prince alleges his counsel should have introduced evidence that the victim and other eyewitnesses were convicted drug dealers, the record reflects that counsel brought out the existence and number of prior felonies for Jones and the victim testified on direct he had felony convictions. Resp. Exs. C at 304-05; D at 333. Counsel was not permitted to discuss the nature of those convictions. See § 90.610, Fla. Stat.; Spradling v. State, 211 So. 3d 1144, 1145 (Fla. 1st  DCA 2017) (citing Gavins v. State, 587 So. 2d 487 (Fla. 1st DCA 1991)) ("If the witness admits to or testifies accurately to the number of convictions, the witness may not be questioned further regarding prior convictions, nor questions as to the nature of the crimes."). Accordingly, counsel cannot be deficient for failing to introduce inadmissible evidence. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. The record further reflects that counsel cross-examined witnesses concerning the deficiencies in the police investigation, Resp. Ex. C at 145-55, 161, 176, 177-82, 185-86, 192-95, and argued during closing that the investigation was not thorough enough to support a

conviction. Resp. Ex. D at 403-08. Thus, the record refutes Prince's allegation that counsel failed to develop this defense. To the extent Prince asserts that counsel should have argued that White could have shot his own vehicle to frame Prince, this allegation is entirely too speculative to warrant federal habeas relief because Prince has no evidence to support this contention. For the above stated reasons, the claim in Ground Twelve is due to be denied.

### K. Ground Thirteen

Prince contends that his trial counsel was deficient for failing to move to dismiss the amended Information based on malicious prosecution. Amended Petition at 58-61. Noting that the State amended the information a week before trial to add the charge of attempted first-degree murder, Prince maintains this amendment was malicious because the amendment occurred so close to trial and because the discovery the State provided did not provide an evidentiary basis for the element of "intent to kill" in attempted first-degree murder. Id. at 58-59. Prince also asserts that the State must have known the victim changed his deposition testimony to state that Prince threatened to kill him; however, the prosecutor failed to disclose that information and instead increased the charges against him. Id. at 59-60. According to Prince, all of this demonstrates malicious prosecution on the part of the State. Id. at 60.

In his Amended Rule 3.850 Motion, Prince raised a similar claim. Resp. Ex. N at 76-78. The circuit court denied relief on this claim but did so without analysis; instead, it adopted the State's response to the claim. Id. at 239. In its response, the State made the following arguments:

> The Defendant was originally charged on March 12, 2009 with Aggravated assault and Possession of a Firearm by a

45

Juvenile Delinquent. Rule 3.140(j) provides that an Information on which the defendant is to be tried that charges an offense may be amended on the motion of the prosecuting attorney or defendant at any time prior to trial because of formal defects. On February 17, 2010, the State amended Defendant's charges to Aggravated Assault and Possession of a Firearm by a Convicted Felon. Finally, on February 26, 2010, the State amended the Defendant's charges to Attempted Murder in the First Degree and Possession of a Firearm by a Convicted Felon.

The elements of malicious prosecution are a judicial proceeding that was 1) commenced against the plaintiff; 2) was instigated by the defendant; 3) ended in favor of the plaintiff; 4) was instigated with malice; 5) was commenced without probable cause and 6) resulted in damage to the plaintiff. Wolfe v. Foreman, 128 So. 3d 67 (Fla. 3d DCA 2013). However, the litigation privilege applies to a cause of action for malicious prosecution, which provides absolute immunity for an act occurring during the course of a judicial proceeding as long as the act has some relation to the proceeding. Id. Furthermore, prosecutors are entitled to absolute immunity when they perform their quasi-judicial function of initiating prosecution and presenting the State's case. Hansen v. State, 503 So. 2d 1324, 1326 (Fla. 1st DCA 1987). The courts have held that it is necessary to the judicial process in the enforcement of the criminal laws of the State that the state attorney be free from any apprehension that he or she may subject the State to liability for acts performed in the exercise of the offense. Weston v. State, 373 So. 2d 701, 702 (Fla. [1st] DCA 1979). The courts have reasoned that a curb upon the exercise of such judgment by the state attorney would have a crippling effect upon the State's ability to prosecute crime. Id. Therefore, the State has immunity from the tort liability of malicious prosecution. Id. An attorney is not ineffective for failing to file a meritless motion. Lugo v. State, 3 So. 3d 1 (Fla. 2008). Accordingly, since the Defendant has failed to show a prima facie case for relief as to Ground XIV regarding either legal deficiency or prejudice, the State suggests this honorable court may summarily deny Ground XIV of the Defendant's Motion based upon the record provided by the State, and the State's argument in this Response, without holding a hearing.

Id. at 271-72 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim without issuing a written opinion. Resp. Ex. R.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Prince is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, relief on the claim in Ground Thirteen is not warranted. Florida Rule of Criminal Procedure 3.190(b) provides that any available defenses, other than a not guilty plea, are grounds for a motion to dismiss. Malicious prosecution is not a defense to a criminal charge but a tort, a civil claim that is itself dependent on a judicial proceeding ending in favor of a defendant. See generally Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994) (noting one element of a malicious prosecution claim is whether "the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff."). Here, a jury convicted Prince of two felonies, which establishes that under Florida law malicious prosecution did not occur. See id. Moreover, "[a]n information on which the defendant is to be tried that charges an offense may be amended on the motion of the prosecuting attorney or defendant at any time prior to trial because of formal defects." Fla. R. Crim. P. 3.140(j). In fact, "the state may

substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant." State v. Anderson, 537 So. 2d 1373, 1375 (Fla. 1989). Accordingly, the fact that the State amended Prince's Information a week prior to trial  would not have been a viable ground to move to dismiss the Information. See Fla. R. Crim. P. 3.140(j). Additionally, the Court finds Prince cannot demonstrate prejudice because, as previously discussed above, the jury ultimately convicted Prince of the lesser offense of attempted second-degree murder, a conviction established by evidence other than the victim's testimony that Prince threatened to kill him. In light of the above analysis, the Court finds that Prince is not entitled to relief and the claim in Ground Thirteen is due to be denied.

### L. Ground Fourteen

Lastly, Prince argues that the cumulative impact of the errors alleged in the Amended Petition resulted in an unfair trial and the deprivation of his right to effective assistance of counsel. Amended Petition at 62. Prince is not entitled to relief. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Accordingly, because the Court determined that each of the proceeding claims lacked merit, the claim in Ground Fourteen is due to be denied. See id.

### VIII. Certificate of Appealability

### Pursuant to 28 U.S.C. § 2253(c)(1)

If Prince seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Prince "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    Prince's Motion for Fact Development (Doc. 43) is **GRANTED in part and DENIED in part**.

2.    The Amended Petition (Doc. 9) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

4.      If Prince appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

5.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of January, 2021.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:      Darius Antwan Prince #132681
        Bryan G. Jordan, Esq.